**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **IRONGATE AI, LLC and** | § | |
| **ALEXANDER FUCHSMAN,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **MO:25-CV-00159-DC-RCG** |
| | § | |
| **JONATHAN HOUK and FORECYBER,** | § | |
| *Defendants*. | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Defendants ForeCyber and Jonathan Houk's Motion to Dismiss. (Doc. 6).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 6).

## I.    BACKGROUND

On April 9, 2025, Plaintiffs Irongate AI, LLC ("Plaintiff Irongate AI") and Alexander Fuchsman ("Plaintiff Fuchsman") (collectively, "Plaintiffs") filed their Original Complaint against Defendants ForeCyber ("Defendant ForeCyber") and Jonathan Houk ("Defendant Houk") (collectively, "Defendants"). (Doc. 1). Plaintiffs assert five causes of action against both Defendants and an additional five causes of action against Defendant Houk.[2] (Doc. 1). The claims against both Defendants include: (1) violation of the Defend Trade Secrets Act ("DTSA")

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

2. In their Complaint, Plaintiffs also brought a claim for tortious inference with a contract against both Defendants. (Doc. 1 at 13). However, in their Response to Defendants' Motion to Dismiss, Plaintiffs agree to dismiss this claim. (Doc. 9 at 16 n.4). The Court will recommend dismissal below.

under 18 U.S.C. § 1836; (2) tortious interference with prospective economic advantage; (3) fraud and misrepresentation; (4) declaratory judgment as to ownership of intellectual property[3]; and (5) judicial dissolution of LLC. *Id*. Plaintiffs' claims against Defendant Houk are as follows: (1) breach of fiduciary duty[4]; (2) breach of contract; (3) violation of confidentiality agreement; (4) removal/expulsion from LLC; and (5) defamation and disparagement. *Id*.

Plaintiffs' relevant factual allegations are as follows. At an unspecified time, Plaintiff Fuchsman and Defendant Houk partnered to create Irongate AI. (Doc. 1 at 4). "The goal of the partnership was to solve several issues unique to datacenter projects, including: dealing with America's antiquated power grid which could not handle the mass production and use of Graphics Processing Units ("GPU"); national security issues related to America's datacenter infrastructure and designs; the inability to bring micro-datacenters to market quickly and efficiently; and to provide for community involvement and ownership of datacenters to support and develop local communities across the country (collectively the "GPU Problem")." *Id*. Over the next few months, the two developed technology, designs, know-how, and an innovative solution to the GPU Problem that would allow Irongate AI to bring GPUs to market efficiently while simultaneously significantly reducing the power requirements for GPU use. *Id*. Within the LLC, Plaintiff Fuchsman was focused on aligning with the community and building relationships, while Defendant Houk worked with a technology provider to bring the product to market. *Id*. at 5.

---

3. The Court notes the Declaratory Judgment Act provides no independent cause of action. *Texas v. Ysleta del Sur Pueblo*, 367 F. Supp. 3d 596, 602 (W.D. Tex. 2019).

4. In their Response, Plaintiffs provide that they consent to the dismissal of the breach of fiduciary duty claim against Defendant ForeCyber. (Doc. 9 at 11 n.3). Based on the Court's review of Plaintiffs' Complaint, it does not appear they brought such a claim. But, to the extent they did, the Court will recommend it be dismissed below.

Plaintiffs allege the deal they were initially working on was supposed to take place in Midland, Texas ("Midland Texas Deal") to provide consulting services in connection with the construction of a 400 mega-watt datacenter. *Id*. Additionally, Plaintiff Irongate AI was working to take on strategic partners and secure deals for the construction of additional datacenters in Texas. *Id*. At the same time, the Complaint provides Defendant Houk was creating his own LLC—Defendant ForeCyber—and working on a side project using Plaintiff Irongate AI's intellectual property, strategy, and know-how. *Id*. While Plaintiffs believed the work done by Defendant Houk was in an effort to secure the Midland Texas Deal for Plaintiff Irongate AI, Defendant Houk instead allegedly took the consulting deal for himself. *Id*.

The Complaint goes on to describe the improper behavior Defendant Houk engaged in to alienate Plaintiffs from the Midland Texas Deal and their strategic partners. *Id*. Plaintiffs assert Defendant Houk disparaged Plaintiff Fuchsman to Plaintiff Irongate AI's partners to sow distrust. *Id*. Further, Defendant Houk blocked Plaintiff Fuchsman's access to his Irongate AI email accounts and Microsoft 365 account to keep him in the dark about what Defendant Houk was doing. *Id*. at 6. Plaintiffs allege Defendant Houk was communicating with numerous people and entities to steal the consulting project from Plaintiff Irongate AI. *Id*. Further, Defendant Houk destroyed and manipulated critical company data, specifically extensive volumes of email communications with strategic partners, investors, vendors, and internal stakeholders. *Id*. Defendant Houk also modified and replaced several financial files containing projected budgets, investor-related forecasts, and internal capex planning data. *Id*. at 6–7. Plaintiffs reason, on information and belief, Defendant Houk was sabotaging Plaintiff Irongate AI's funding as a pretext and faux justification to allow him to secure the Midland Texas Deal for himself, using Plaintiff Irongate AI's intellectual property. *Id*. at 6. "When confronted about the status of the

deal, Houk brazenly informed Fuchsman that the deal was not going forward 'at least not for Irongate' and all but admitted to stealing the Midland Texas Deal for himself." *Id*. at 8.

On June 2, 2025, Defendants filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint. (Doc. 6). Defendants primarily move to dismiss Plaintiffs' sole federal claim under the DTSA, arguing then that the Court must dismiss Plaintiffs' remaining state law claims for lack of subject matter jurisdiction. *Id*. at 3. Alternatively, if the Court does not dismiss Plaintiffs' DTSA claim, Defendants argue Plaintiffs' remaining claims, save the violation of a confidentiality agreement claim, should be dismissed on the merits.[5] *Id*. at 5–10. The instant matter is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio,*

---

5. In the factual background section of Plaintiffs' Complaint, they refer to two statutes: 18 U.S.C. § 1519 and 18 U.S.C. § 1030(a)(5)(A). (Doc. 1 at 8). Defendants ask the Court to dismiss these two statutory claims. (Doc. 6 at 10). However, because Plaintiffs do not list these as causes of action and make no argument against dismissal in their Response, the Court does not find Plaintiffs brought claims under these statutes.

*L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

"Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. EP-CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the

statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). In the corporate context, "plaintiffs must plead when each defendant or other corporate officer learned that a statement was false, how that defendant learned that the statement was false, and the particular document or other source of information from which the defendant came to know that the statement was false." *Schnurr v. Preston*, No. 5-17-CV-512, 2018 WL 8584292, at *3 (W.D. Tex. May 29, 2018). Courts cannot presume fraud from vague allegations. *Id*.

## III.  DISCUSSION

In their Motion to Dismiss, Defendants, with opposition from Plaintiffs, move to dismiss eight causes of action. (Doc. 6). The Court will address each in turn, beginning with Plaintiffs' sole federal claim.

### A.  Violation of DTSA Against Both Defendants

Defendants argue Plaintiffs fail to identify any trade secret with sufficient particularity and fail to allege how the purported information provides economic value, is not readily ascertainable by proper means, and was kept secret. *Id*. at 3. Plaintiffs counter that they have established all the necessary elements of a DTSA claim and should not be expected to expose the details of the trade secret in a publicly filed document. (Doc. 9 at 4–8).

To establish a DTSA claim, Plaintiffs must show: (1) a trade secret existed; (2) the trade secret was misappropriated; and (3) Defendants used the trade secret without authorization from Plaintiffs. *CAE Integrated, LLC v. Moov Tech., Inc.*, 4 F.4th 257, 262 (5th Cir. 2022). For a trade secret to exist under the first element (1) the owner must have taken reasonable measures to keep the information secret and (2) the information must derive independent economic value, actual or

potential, from not being generally known by or readily accessible to the public. 18 U.S.C. § 1839(3); *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025). As to the second element, the DTSA defines the term "misappropriation" in many ways. 18 U.S.C. § 1839(5). Seemingly relevant here, misappropriation can mean "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id*. § 1839(5)(B)(ii). Plaintiffs must also demonstrate that the trade secret related to a "product or service used in, or intended for use in, interstate or foreign commerce." *See id*. § 1836(b)(1).

> ### i.    Existence of a Trade Secret

At the motion to dismiss stage, Plaintiffs do "not need to provide a specific description of the trade secret." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 561 (N.D. Tex. 2024) (citing *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 493 (5th Cir. 2016)). "It is sufficient if the allegations demonstrate that at least some aspects of the information at issue constitute a trade secret." *Id*. (internal quotations omitted). "Specifically, to allege a trade secret, the plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020).

In its Response, Plaintiffs recite the paragraphs in their Complaint they assert allege the existence of a trade secret. (Doc. 9). Plaintiffs explain Plaintiff Fuchsman and Defendant Houk partnered, creating Irongate AI, with the goal of "solv[ing] several issues unique to datacenter projects, including: dealing with America's antiquated power grid which could not handle the mass production and use of [GPU]; national security issues related to America's datacenter infrastructure and designs; the inability to bring micro-datacenters to market quickly and efficiently; and to provide for community involvement and ownership of datacenters to support and develop local communities across the country (collectively the "GPU Problem")." *Id*. at 5. Together, the parties developed technology, designs, know-how, and strategy to solve the GPU Problem. *Id*. at 5–6. Plaintiffs assert this solution is the trade secret. *Id*. This, however, is not sufficient to allege the existence of a trade secret. *See Am. Biocarbon*, 2020 WL 7264459, at *4 (holding the plaintiff failed to identify the information comprising its trade secret because it "does not specifically identify what studies, what 'know how,' what research, what testing, or what designs it claims to have, or claims the Defendants have misappropriated").

A "plaintiff's definition of a trade secret cannot be too vague or inclusive." *Centennial Bank*, 717 F. Supp. 3d at 561. "[C]ourts routinely find a plaintiff's allegations to be sufficient if they 'identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets.'" *Id*. (quoting *Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 14-CV-3601, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016)). But broad, categorical terms will not do. *Am. Biocarbon*, 2020 WL 7264459, at *5. While Plaintiffs are correct that they are not required to "divulge the exact details of the trade secret in a publicly filed document," the allegations describing the trade secret in the Complaint are simply too generic. (Doc. 9 at 6).

Further, though the Court finds Plaintiffs sufficiently pleaded Plaintiff Irongate AI is the owner of the information, they do not allege Plaintiff Irongate AI attempted to keep the information secret or that the information derived economic value from not being generally known. *See* 18 U.S.C. § 1839(3). To allow the Court to infer Plaintiff Irongate AI is the owner of this information, Plaintiffs allege Defendants took the trade secrets of Plaintiff Irongate AI to secure a multi-billion dollar infrastructure deal. (Doc. 1 at 2). However, the Complaint makes no attempt to explain any efforts Plaintiff Irongate AI used to keep this information secret, and Plaintiffs' Response provides no insight. Further, while Plaintiffs do allege the information has economic value—asserting it was used to secure a multi-billion dollar deal—they do not explain how the information derives independent economic value *from* not being generally known by or readily accessible to the public. *See* 18 U.S.C. § 1839(3); *see also El Paso Disposal*, 766 F. Supp. 3d at 711. Accordingly, without more, the Court cannot conclude Plaintiffs pleaded sufficient facts to establish the existence of a trade secret.

### ii. Misappropriation and Use

Without finding the existence of a trade secret, the analysis of the remaining two elements does not flow naturally. However, the Court will note, if the alleged trade secret involving the solution to the GPU Problem was sufficiently pleaded, Plaintiffs could establish a DTSA claim.

In their Complaint, Plaintiffs provide Defendant Houk, while at Irongate AI, was the Chief Technology Officer and was involved in securing the Midland Texas Deal. (Doc. 1 at 2). Defendant Houk then began operating under an LLC—Defendant ForeCyber—and "during the negotiations of the Midland Texas Deal, instead of using the intellectual property/trade secrets of Irongate AI to finalize the deal on behalf of [Plaintiff Irongate AI], instead, the defendants stole

the intellectual property/trade secrets of Irongate AI, and instead secured a separate consulting deal for themselves." *Id*. at 10. The Court finds this demonstrates the (currently insufficiently alleged) trade secret was misappropriated by Defendants, used without authorization from Plaintiffs, and was intended to be used in interstate commerce. *See Centennial Bank*, 717 F. Supp. 3d at 564 ("[C]ircumstantial evidence such as a defendant's motivation and leaving the plaintiff to work for a competitor doing substantially similar work also often indicates misappropriation.").

Even so, because Plaintiffs have not sufficiently alleged the existence of a trade secret, their DTSA claim necessarily fails. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Plaintiffs' DTSA claim against both Defendants (Doc. 6) and the claim be **DISMISSED WITHOUT PREJUDICE**.

### B. Plaintiffs' State Law Claims and Choice of Law

In addition to Plaintiffs' one sole federal claim, Plaintiffs also bring eight state law claims. As to Plaintiffs' state law claims, Defendants ask the Court to decline supplemental jurisdiction. (Doc. 6 at 3). As pleaded, the Court finds supplemental jurisdiction not appropriate, but as discussed below, it is nevertheless recommended that Plaintiffs be given an opportunity to amend their Complaint.

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal court can only entertain cases that fall within its original jurisdiction. There are two avenues for original jurisdiction: federal question and diversity of citizenship. As provided in Plaintiffs' Complaint, federal question jurisdiction applies when the action arises under the United States Constitution or federal statutory law. 28 U.S.C. § 1331. Diversity of citizenship is implicated

when a citizen of one state sues a citizen of another state and the amount in controversy is more than $75,000. *Id.* § 1332. The party asserting jurisdiction has the burden of establishing it. *McMahon v. Fenves*, 946 F.3d 266, 279 (5th Cir. 2020). Here, as the party selecting the forum, the burden lies with Plaintiffs.

When a plaintiff brings multiple claims and some are within the court's original jurisdiction and some are not, supplemental jurisdiction may apply. A court has supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) (citing 28 U.S.C. § 1367(a)). Because supplemental claims are not within the Court's original jurisdiction, when the Court dismisses all claims over which it has original jurisdiction, it has broad discretion to decline supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 823 (W.D. Tex. 2007) ("When a district court has dismissed all federal claims from a cause before trial, the general rule in our Circuit directs district courts to decline to exercise supplemental jurisdiction over supplemental state law claims.").

Here, Plaintiffs assert federal question jurisdiction through their DTSA claim.[6] For the reasons explained above, the Court recommends dismissal of Plaintiffs' DTSA claim. Thus, only Plaintiffs' state law claims remain. So, as Defendants argue, the Court may exercise its discretion and decline supplemental jurisdiction over Plaintiffs' remaining state law claims.

Accordingly, the undersigned **RECOMMENDS** the District Judge **DECLINE** to exercise supplemental jurisdiction over Plaintiffs' state law claims. Further, the Court

---

6. As Defendants point out in the instant Motion, Plaintiffs' Complaint also invokes the federal Declaratory Judgment Act as a basis for the Court's jurisdiction. (Doc. 1 at 3). Defendants argue this is improper and Plaintiffs seemingly agree as they argue in their Response that, if the DTSA claim is dismissed, they could amend their Complaint to show complete diversity. (Doc. 9 at 9).

**RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' state law claims be **GRANTED** (Doc. 6) and the state law claims be **DISMISSED WITHOUT PREJUDICE**. Even so, as discussed below, the Court is affording Plaintiffs the opportunity to replead their Complaint.

Despite recommending dismissal, in the interest of thoroughness, the Court will analyze each of Plaintiffs' state law claims. As a preliminary matter, the Court must address the choice of law issue Plaintiffs' present. (Doc. 9 at 10). In their Response, while addressing their first state law claim, Plaintiffs state that "while this matter is pending in Texas, it is not certain that Texas law will apply to this dispute." *Id*. Plaintiffs explain that the parties here are residents of Delaware, New Jersey, and Connecticut, but the location of the dispute and improper actions of Defendants took place in Texas. *Id*. Without attempting to resolve the issue, Plaintiffs state it is likely either Texas or Delaware law that applies, and Plaintiffs proceed to apply both Texas and Delaware law, reaching the same conclusion, to their first state law claim and apply only Texas law to the remaining claims. *See id*. Defendants do not weigh in on the issue and apply only Texas law in their Motion to Dismiss and Reply in support. (*See* Docs. 6, 12).

Normally, "a federal district court must apply the state law that would be applied by the state court of the state in which it sits. This is true whether the basis for subject matter jurisdiction is diversity of citizenship under 28 U.S.C. § 1332 or federal question under 28 U.S.C. § 1331." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). That means this Court should apply Texas' choice-of-law rules. *Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1075 (5th Cir. 1990) ("A federal court must follow the choice-of-law rules of the state in which it sits."). The Texas choice-of-law rules are claim-specific. *See Melton v. Borg-Warner Corp.*, 467 F. Supp. 983, 985 (W.D. Tex. 1979) ("[I]n tort

actions Texas courts apply the traditional tort choice of law rule Lex loci delictus, the law of the place of the tort."); *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011) ("In the absence of an applicable choice of law provision in a contract, this court applies Texas law unless a conflict exists between Texas law and that of the other proposed state.").

In the absence of helpful briefing from the parties, many courts have adopted a simpler approach: "[T]he parties appear to assume without argument that Texas law governs, and so, without deciding, shall we." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999); *see Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 436 n.5 (5th Cir. 1996) ("As both sides argue this issue under Texas law, we apply Texas law in our analysis and assume that no one disputes its applicability."); *Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 730 n.5 (E.D. La. 2015) ("Yet none of the parties briefed the Court on the choice-of-law issue, and the parties' memoranda apply Louisiana law. Consequently, the Court applies Louisiana law . . . ."); *Marquis v. OmniGuide, Inc.*, No. 3-09-CV-2092, 2011 WL 321112, at *8 (N.D. Tex. Jan. 28, 2011) ("Both parties apply Texas law in their briefing, and in the absence of disagreement, this court does as well."); *Morlock, LLC v. Petteway*, No. 21-CV-03202, 2024 WL 4265811, at *8 n.3 (S.D. Tex. Sept. 23, 2024) ("Neither Party disputes that Texas law applies, and both Parties exclusively cite Texas law."). Thus, the consensus seems to be, absent dissent or any indication to the contrary, courts apply the law applied by the parties in their briefing.

While Plaintiffs comment that it is unclear what law applies, they rely almost exclusively relying on Texas law. Accordingly, the Court will do the same.

### i. Tortious Interference with Prospective Economic Advantage Against Both Defendants

As an initial matter, the Fifth Circuit has stated it has "reservations that tortious interference with prospective economic advantage exists, as such, under Texas law." *Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 280 n.1 (5th Cir. 2000). The Circuit provided the "closest analogue appears to be tortious interference with prospective business relations." *Id.* As both parties list the elements of tortious interference with prospective business relations,[7] the Court will assume that is the alleged cause of action.

To state a claim for tortious interference with prospective business relations, Plaintiffs must establish the following elements:

> (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's actions prevented the relationship from occurring.

*U.S. Enercorp, Ltd. v. SDC Mont. Bakken Exp., LLC*, 966 F. Supp. 2d 690, 702 (W.D. Tex. 2013) (citing *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590–91 (Tex. App.—Austin 2007, pet. denied)). Defendants argue Plaintiffs do not even attempt to address the first three elements. (Doc. 6 at 6). The Court disagrees.

To satisfy the first element, Plaintiffs allege that "Houk and Fuchsman were able to secure the Midland Texas Deal for Irongate AI and were in the process of finalizing the deal, as well as other deals, partnerships, and consulting arrangement when defendants took the deals for themselves." (Doc. 1 at 3). Second, Plaintiffs consistently allege Defendants intentionally and maliciously intervened to prevent Irongate AI from securing the Midland Texas Deal. For

---

7. This claim is also sometimes referred to a tortious interference with prospective contractual relations.

example, Plaintiffs assert (1) "Houk disparaged Fuchsman to Irongate's partners in order to sow distrust between the parties in order to seek to have Fuchsman removed from the deal"; (2) "Houk was communicating with numerous people and entities separately, in an effort to steal the consulting project from Irongate AI"; and (3) "Ultimately, with Fuchsman having no access to the Irongate AI systems, Houk then secretly leveraged the intellectual property and business strategies of Irongate AI in order to negotiate and finalize the consulting deal, not for Irongate, but for himself and/or the separate LLCs he had created behind Fuchsman and Irongate's back." *Id*. at 5, 6, 8. Looking at the third element, Plaintiffs explain "[o]n information and belief, Houk was sabotaging Irongate AI's funding as a pretext and faux justification to allow him to go out on his own and secure the consulting project in Midland, Texas, while simultaneously using the intellectual property specifically developed for Irongate." *Id*. at 6. Finally, although Defendants do not dispute the fourth element, the Court finds Plaintiffs alleged the damages were the value of the Midland Texas Deal. *Id*. at 14.

Accordingly, Plaintiffs have adequately pleaded their claim against both Defendants for tortious interference with prospective economic advantage. The Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claim for tortious interference with prospective economic advantage against both Defendants be **DENIED**. (Doc. 6).

ii.    **Breach of Fiduciary Duty Against Defendant Houk**

Under Texas law, Plaintiffs must establish the following elements to show a breach of fiduciary duty: (1) a fiduciary relationship between Plaintiffs and Defendant Houk, (2) Defendant Houk breached his fiduciary duty to Plaintiffs, and (3) Defendant Houk's breach resulted in either injury to Plaintiffs or benefit to Defendant Houk. *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 693 (S.D. Tex. 2020) (citing *Navigant Consulting, Inc. v.*

*Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied))). In their Response, Plaintiffs plainly state that "the members of an LLC owe a fiduciary duty to the other members as well as to the LLC itself (a plaintiff in this action), particularly whereas here, when the members govern the activities within the LLC." (Doc. 9 at 10).

Under Texas law, it is not so cut and dry whether a member owes the LLC or other members a fiduciary duty. In fact, the Texas Business Organizations Code is silent as to an LLC member's fiduciary duties. *Katz v. Intel Pharma, LLC*, No. H-18-1347, 2020 WL 3871493, at *2 (S.D. Tex. July 9, 2020) (citing TEX. BUS. ORG. CODE § 101.401). Further, "Texas courts have not held that members of an LLC owe fiduciary duties as a matter of law when the operating agreement is silent." *Savoia-McHugh v. McCrary*, No. 20-3387, 2021 WL 4066992, at *4 (S.D. Tex. Sept. 7, 2021). At most, case law suggests a managing member of an LLC owes a fiduciary duty to the LLC through agency-law principles. *Id.*; *Katz*, 2020 WL 3871493, at *2; *CyberX Grp., LLC v. Pearson*, No. 20-CV-2501, 2021 WL 1966813, at *5 (N.D. Tex. May 17, 2021); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (finding "agency is also a special relationship that gives rise to a fiduciary duty"). And a managing member may owe a fiduciary duty to an individual member in certain circumstances. *Toth Enters. II, P.A v. Forage*, 707 F. Supp. 3d 697, 711 (W.D. Tex. 2023).

Even so, Plaintiffs have not pleaded any factual allegations that would allow the Court to determine whether a fiduciary duty exists between Defendant Houk and either Plaintiff. Because Plaintiffs have not sufficiently pleaded a fiduciary duty, it necessarily follows that Plaintiffs did not adequately plead a breach of fiduciary duty against Defendant Houk. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claim for breach of fiduciary

duty against Defendant Houk be **GRANTED** (Doc. 6) and the claim be **DISMISSED WITHOUT PREJUDICE**.

### iii.    Fraud and Misrepresentation Against Both Defendants

Based on the briefing, Plaintiffs seem to be alleging claims for fraud by misrepresentation and omission. (*See* Docs. 6, 9, 12); (Doc. 1 at 16) ("The defendants failure to inform Fuchsman of their improper business dealings and theft of trade secrets was a false representation or omission by defendants that was intended to lull plaintiffs into a sense of security that defendants were actually working for the benefit of the LLC."). "To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, LLP v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)). Plaintiffs may also claim the misrepresentation occurred by omission—"silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Id.* (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)). Generally, no duty exists without a confidential or fiduciary relationship. *Id.* As an exception, "a duty to speak arises between non-fiduciaries when one party learns later that his previous affirmative statement was false or misleading." *Shandong Tinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) (internal quotations omitted). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have

appeared, and the way in which the omitted facts made the representations misleading." *U.S. ex rel Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004).

Here, Defendants argue the Complaint only alleges Defendants failed to inform Plaintiff Fuschman of their improper business dealings and theft of trade secrets. (Doc. 6 at 8). Defendants assert these are conclusory allegations that do not meet the heightened pleading standard. *Id*. In contrast, Plaintiffs provide they identified the misrepresentations Defendants made and how they relied on those misrepresentations. (Doc. 9 at 19). The Court agrees with Defendants.

As the Court found above, Plaintiffs have not sufficiently pleaded a fiduciary duty between themselves and Defendant Houk, and Plaintiffs do not allege they have a fiduciary relationship with Defendant ForeCyber. Thus, based on the live Complaint, Defendants did not have a fiduciary duty to speak or inform. Plaintiffs also cannot establish fraud by omission through the exception because Plaintiffs provide no factual allegations regarding Defendants' failure to correct previous false statements. *See Potter*, 607 F.3d at 1035. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claim for fraud and misrepresentation against Defendant Houk be **GRANTED** (Doc. 6) and the claim be **DISMISSED WITHOUT PREJUDICE**.

#### iv.    Preemption of Fiduciary Duty, Tortious Interference, and Fraud and Misrepresentation Claims

In addition to challenging Plaintiffs' claims for breach of fiduciary duty, tortious interference, and fraud and misrepresentation on the merits, Defendants also argue these claims are preempted by the Texas Uniform Trade Secrets Act ("TUTSA"). (Doc. 6 at 8). The TUTSA has a preemption provision providing the statute "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV.

PRAC. & REM. CODE § 134A.007(a). "Where a claim is based on a misappropriation of a trade secret, then it is preempted by the Texas Uniform Trade Secrets Act." *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.). The purpose of TUTSA preemption is to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 684 (W.D. Tex. 2019) (quoting *Super Starr*, 531 S.W.3d at 843). "Texas courts have provided little guidance on the scope of TUTSA's preemption provision, but the majority of courts considering this issue . . . have held that TUTSA preempts all claims based on the alleged improper taking of trade secret and confidential business information." *El Paso Disposal, LP*, 766 F. Supp. 3d at 717 (internal quotations omitted).

The Court finds two issues with Defendants' argument. First, Plaintiffs have not brought a cause of action under TUTSA. While the Court acknowledges the elements and definitions of the DTSA and TUTSA are "near identical," the Court is not convinced the TUTSA preemption provision applies when only its federal counterpart is plead. *El Paso Disposal*, 766 F. Supp. 3d at 711.

Second, the Court finds it premature to consider Plaintiffs' tort claims preempted at this juncture. As noted above, the Court does not find Plaintiffs sufficiently alleged a trade secret. Even if Plaintiffs' DTSA claim survived a motion to dismiss, at this early stage in litigation, the Court has not determined whether the material constitutes a trade secret. And if the Court ultimately finds it is not a trade secret, Plaintiffs' tort claims would not be preempted under the TUTSA, assuming the statute even applies. TEX. CIV. PRAC. & REM. CODE § 134A.007(b)(2) ("This chapter does not affect . . . other civil remedies that are not based upon misappropriation

of a trade secret."); *Riot v. Apex Trader Funding Inc.*, No. 24-CV-01557, 2025 WL 1502562, at *1 (W.D. Tex. May 13, 2025). While some courts have found it appropriate to dismiss claims as preempted at this stage, the recent trend is to allow the claims to proceed. *See e.g.*, *id.* (collecting cases); *Topstone Commc'n, Inc. v. Xu.*, 729 F. Supp. 3d 701, 709 (S.D. Tex. 2024) (holding the court cannot yet determine whether the plaintiff pleaded a trade secret, thus finding it cannot dismiss alternative theories as preempted); *El Paso Disposal*, 766 F. Supp. 3d at 721 (allowing the plaintiffs' tort claims to proceed in the alternative until the court adjudicates the trade secret issue); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. Tech., Ltd.*, No. 20-cv-008876, 2021 WL 3931910, at *7 (W.D. Tex. Sept. 1, 2021) (declining to dismiss claims as preempted before the information at issue had been categorized as secret). Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to preempting Plaintiffs' claims for breach of fiduciary duty, tortious interference, and fraud and misrepresentation be **DENIED**. (Doc. 6).

### v.    Breach of Contract Against Defendant Houk

In their Complaint, Plaintiffs assert they entered into an oral agreement with Defendant Houk to "develop intellectual property/trade secrets, know-how, confidential business information, and confidential business strategies in order to address America's GPU Problem and offer a solution to both businesses and municipalities." (Doc. 1 at 18). Plaintiffs assert Defendant Houk breached this agreement by leveraging the intellectual property and trade secrets of Irongate AI to secure business for himself. *Id.*

In Texas, a breach of contract claim requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v.*

*Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st. Dist.] 2001, reh'g overruled)). The elements of a valid contract are: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, No. 16-CV-1291, 2017 WL 11221433, at *3 (W.D. Tex. Oct. 19, 2017) (citing *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.— Fort Worth 2004, pet. denied)). "The elements of written and oral contracts are the same and must be present for a contract to be binding." *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications." *Id.*

Here, Plaintiffs fail to allege any of the elements to show the oral agreement between themselves and Defendant Houk was a valid contract. Plaintiffs simply make a conclusory allegation that there was an agreement made. (*See* Doc. 1 at 18). Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claim for breach of contract against Defendant Houk be **GRANTED** (Doc. 6) and the claim be **DISMISSED WITHOUT PREJUDICE**.

### vi. Judicial Dissolution of LLC Against Both Defendants and Removal/Expulsion from LLC Against Defendant Houk

As Defendants point out, Plaintiffs' claims for judicial dissolution of Irongate AI and Defendant Houk's removal from the LLC are exclusively premised on the notation that Defendant Houk breached his fiduciary duties to the LLC. (Doc. 1 at 19–20, 23). However, as the Court discussed above, Plaintiffs have not sufficiently pleaded Defendant Houk even owed a fiduciary duty to Plaintiffs. Because the Complaint did not establish a breach of fiduciary duty

and that was Plaintiffs' only reason for dissolution, Plaintiffs did not sufficiently plead these claims. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claim for judicial dissolution against both Defendants and removal/expulsion from the LCC against Defendant Houk be **GRANTED** (Doc. 6) and the claims be **DISMISSED WITHOUT PREJUDICE**.

### vii.    Defamation and Disparagement Against Defendant Houk

Under Texas law, the elements of defamation are: (1) the defendant published a statement (2) that was defamatory concerning the plaintiff (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 866–67 (S.D. Tex. 2010) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)), *aff'd*, 457 F.3d 391 (5th Cir. 2012). "A defamatory statement is one in which the words tend to damage a person's reputation, exposing him or her to public hatred, contempt, ridicule, or financial injury." *Id*. Similarly, to plead a claim for business disparagement, Plaintiffs must show: (1) publication by the defendant of the disparaging words, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Teel v. Deloitte & Touche LLP*, No. 15-CV-2593, 2015 WL 9478187, at *3 (N.D. Tex. Dec. 29, 2015) (citing *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). The special damages component requires direct injuries to a business interest and the damages are limited to business losses. *Id*. at *4. While these claims are not subject to a heightened pleading standard, a plaintiff must plead factual assertions as to the statements made that are sufficiently detailed to allow the defendant to respond. *Id*.

Plaintiffs have not sufficiently alleged what statements Defendant Houk made. Plaintiffs simply repeat that Defendant Houk made "disparaging and defamatory remarks" about Plaintiff

Fuchsman. (*See* Doc. 1 at 5, 24–25). In addition to not alleging what the statements were, Plaintiffs fail to provide any facts as to how the statements were published. Because Plaintiffs do not allege when, where, or to whom the statements were published, neither claim can survive. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claims for defamation and disparagement against Defendant Houk be **GRANTED** (Doc. 6) and the claims be **DISMISSED WITHOUT PREJUDICE**.

### C. Plaintiffs' Request for Leave to Amend

In their Response, Plaintiffs request, in the alternative, that the Court grant them leave to amend their Complaint for the first time. (Doc. 9 at 23). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, SA-22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). Although "leave to amend is by no means automatic," a court should "possess a 'substantial reason' to deny leave to file an amended complaint." *Lawton v. Osado Water Transfer Co.*, No. 15-CV-00189, 2016 WL 11586133, at *1 (W.D. Tex. Sept. 15, 2016) (citations omitted). Here, the Court finds leave to amend proper, as there is no evidence of undue delay, bad faith, and this will be Plaintiffs' first amendment to their Complaint. Thus, the Court **RECOMMENDS** Plaintiffs' request to amend their Complaint be **GRANTED**.

### IV.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 6).

First, the Court **RECOMMENDS** Plaintiffs' DTSA claim be **DISMISSED WITHOUT PREJUDICE**. Further, as Plaintiffs have agreed, the Court **RECOMMENDS** Plaintiffs' claims for tortious inference with a contract against both Defendants and breach of fiduciary duty claim against Defendant ForeCyber be **DISMISSED**. (Doc. 9 at 11 n.3, 16 n.4). Because the Court recommends Plaintiffs' sole federal claim be dismissed, the undersigned also **RECOMMENDS** the District Judge **DECLINE** to exercise supplemental jurisdiction over Plaintiffs' state law claims and the claims be **DISMISSED WITHOUT PREJUDICE** to refile in state court.

Alternatively, if this Report and Recommendation is not adopted as to the federal claim, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Plaintiffs' state law claims for (1) breach of fiduciary duty against Defendant Houk, (2) fraud and misrepresentation against Defendant Houk, (3) breach of contract against Defendant Houk, (4) judicial dissolution against both Defendants, (5) removal/expulsion from the LCC against Defendant Houk, and (6) defamation and disparagement against Defendant Houk. (Doc. 6). These claims should be **DISMISSED WITHOUT PREJUDICE**. The Court also **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiffs' claim for tortious interference with prospective economic advantage against both Defendants be **DENIED**. (Doc. 6).

In any scenario, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to preempting Plaintiffs' claims for breach of fiduciary duty, tortious interference, and fraud and misrepresentation be **DENIED**. (Doc. 6).

Finally, the Court **RECOMMENDS** Plaintiffs' request to amend their Complaint be **GRANTED**. Should this Report and Recommendation be adopted, the Court **RECOMMENDS** Plaintiffs be given 14 days from the date of adoption to file an Amended Complaint.

SIGNED this 20th day of October, 2025.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).